SCOTT SCHOOLS
United States Attorney
450 Golden Gate Ave (11th Floor)
San Francisco, CA 94102
Telephone: (415) 436-7200

Attorneys for the United States

FILED
E-FILING
2007 JUL 31 A 9:11
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,           )   CRIMINAL NO. 07 70449
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   NOTICE OF PROCEEDINGS ON
                                    )   OUT-OF-DISTRICT CRIMINAL
Ronald Cruickshank                  )   CHARGES PURSUANT TO RULES
                                    )   5(c)(2) AND (3) OF THE FEDERAL RULES
        Defendant.                  )   OF CRIMINAL PROCEDURE
                                    )
                                    )

    Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on __7/31/07__, the above-named defendant was arrested based upon an arrest warrant (copy attached) issued upon an

    ☒ Indictment    ☐ Information    ☐ Criminal Complaint    ☐ Other _____

pending in the __Eastern__ District of __North Carolina__, Case Number __5-07-CR-177-1-FL__

    In that case, the defendant is charged with a violation(s) of Title(s) __26__ United States Code, Section(s) __7201 and 18 USC section 2__

    Description of Charges: __Attempt to Evade or Defeat tax.__

                                        Respectfully Submitted,
                                        SCOTT SCHOOLS
                                        UNITED STATES ATTORNEY

Date: __7/31/07__                       _____
                                        Assistant U.S. Attorney

1

DMD

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5 07-CR-177-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **I N D I C T M E N T** |
| ) | |
| RONALD CRUICKSHANK ) | |

The Grand Jury charges that:

### COUNTS ONE through FIVE

[Attempt to Evade or Defeat Tax;
26 U.S.C. § 7201 and 18 U.S.C. § 2]

### I. INTRODUCTION

A. **Ronald Cruickshank's background.**

1. The defendant is a well-educated man with a college degree and a masters degree in social psychology. The defendant also represents himself as having a Ph.D. and uses the title Dr. Ronald Cruickshank. By the mid-1990s, the defendant had attained an executive position at Motorola Incorporated and had purchased a home valued at $507,311. The defendant, as required by law, timely filed tax returns reporting his income from Motorola Incorporated through the 1996 tax year.

2. By the late 1990s, due in large part to a tax dispute with the Internal Revenue Service ("IRS") and the North Carolina Department of Revenue ("NC-DOR"), the defendant stopped filing income tax returns. The last individual federal income tax return timely filed by the defendant related to his 1996 tax year.

B. <u>Ronald Cruickshank's position at an advertising firm in Raleigh, North Carolina</u>.

3. During the period from 2000 through mid-2003, the defendant worked at a marketing research/advertising firm ("Advertising Firm") in Raleigh, North Carolina. As noted on the defendant's current business Website, he lists his former position at the Advertising Firm as partner and brand planning leader. The defendant earned the following income from the Advertising Firm for the 2000 through 2003 tax years: (i) 2000 - $75,000;[1] (ii) 2001 - $150,000;[2] (iii) 2002 - $150,000;[3] and (iv) 2003 - $57,291.[4]

4. In order to conceal his receipt of such income, the defendant arranged for the Advertising Firm to pay his salary to a nominee entity named The Optimax Group. As a result of this arrangement, the tax information returns filed by the Advertising Firm with the IRS and the NC-DOR reflected income being earned by The Optimax Group, rather than the defendant. The Optimax Group did not timely file tax returns for the 2000 through 2003 tax years.

---

[1] During the 2000 tax year the defendant also received $20,724 in taxable income from sources other than the Advertising Firm.

[2] During the 2001 tax year the defendant also received $147,132 in taxable income from sources other than the Advertising Firm.

[3] During the 2002 tax year the defendant also received $6,694 in taxable income from sources other than the Advertising Firm.

[4] During the 2003 tax year the defendant also received $138,462 from his work as Chief Executive Officer for a sock manufacturer and $60,915 in taxable income from other sources.

5. The defendant arranged for a bank account to be opened in the name of The Optimax Group ("Optimax Bank Account"). In order to further conceal his receipt of income from the taxing authorities, the defendant arranged for his mother-in-law to be listed as the sole signatory for the Optimax Bank Account.

6. The defendant deposited his paychecks from the Advertising Firm into the Optimax Bank Account. The defendant and his spouse used the funds deposited into the Optimax Bank Account to pay their personal living expenses by signing the defendant's mother-in-law's name on checks drawn on the Optimax Bank Account and through debit charges against the Optimax Bank Account. Notwithstanding the fact that the defendant's mother-in-law was listed as having sole signatory authority for the Optimax Bank Account, she exercised no control over the disbursement of funds from the bank account.

7. In August of 2001, the Advertising Firm was acquired by a larger company. As part of the acquisition, the larger company created a Subchapter S corporation[5] ("S Corporation") and transferred some of the Advertising Firm's assets to the S Corporation. Certain of the Advertising Firm's executives, including the defendant, were allowed to purchase shares in the S

---

[5] Pursuant to Section 1362 of the Internal Revenue Code (which is found in subchapter S of the Tax Code), a small business corporation may elect to be taxed as an Subchapter S corporation.

Corporation. The defendant requested the Advertising Firm to allow him to purchase the shares in the name of The Optimax Group. However, because the Internal Revenue Code does not allow a corporation to be a shareholder of an S Corporation,[6] the Advertising Firm was unable to accommodate the defendant's request. Consequently, rather than using his shell corporation to purchase the stock, the defendant purchased the stock of the S Corporation in his own name.

### C. Ronald Cruickshank's position as Chief Executive Officer for a major sock manufacturer.

8. In 2003, the defendant entered into negotiations regarding possible employment by a major sock manufacturer ("Sock Manufacturer"). The defendant informed the Sock Manufacturer that his usual yearly compensation was $500,000.[7] The defendant ultimately agreed to become Chief Executive Officer of the Sock Manufacturer in exchange for a salary of $300,000 per year. The Sock Manufacturer also agreed to reimburse the defendant's expenses for work related non-local travel. The defendant earned the

---

[6] See 26 U.S.C. § 1361(b)(1).

[7] The defendant further explained that the $500,000 in compensation consisted of $300,000 in salary and $200,000 in incentive bonuses.

4

following income from the Sock Manufacturer in 2003 and 2004: (i) 2003 - $138,462;[8] and (ii) 2004 - $299,999.96.[9]

9. In order to conceal his receipt of income from the IRS, the defendant arranged for the Sock Manufacturer to pay his salary to a nominee entity named General Foundation Fund. The defendant arranged for a person in Cary, North Carolina, to obtain an Employer Identification Number for General Foundation Fund and to allow General Foundation Fund to use a Post Office Box in Cary, North Carolina, for the purpose of providing the Sock Manufacturer with information to be used in filing tax information returns with the taxing authorities. As a result of this arrangement, the tax information returns filed by the Sock Manufacturer with the IRS and the NC-DOR reflected income being earned by the General Foundation Fund, rather than the defendant. General Foundation Fund did not timely file tax returns for 2003 and 2004.

10. Soon after the defendant assumed his position at the Sock Manufacturer, the defendant arranged for his mother-in-law to open bank accounts under the names General Foundation Fund, Inc. ("General Foundation Fund Bank Account") and Aberdeen Investments Global Corp ("Aberdeen Bank Account"). In order to further conceal his receipt of income from the taxing authorities, the defendant

---

[8] During the 2003 tax year the defendant also received $57,291 from the Advertising Firm and $60,915 in taxable income from other sources.

[9] During the 2004 tax year the defendant also received $101,659 in taxable income from other sources.

5

had his paychecks from the Sock Manufacturer deposited into the General Foundation Bank Account and then funneled the money from the General Foundation Bank Account into the Aberdeen Bank Account.

11. The defendant and his spouse used the funds deposited into the General Foundation Fund Bank Account and the Aberdeen Bank Account to pay their personal living expenses by signing the defendant's mother-in-law's name on checks drawn against such accounts and through debit charges payable against such accounts. Notwithstanding the fact that the defendant's mother-in-law was listed as the sole signatory authority for such accounts, she exercised no control over the disbursement of funds from the bank accounts.

### D. Defendant's efforts to impede the IRS's investigation.

12. On September 28, 2004, the IRS issued an administrative summons to The Optimax Group and Optimax, Inc., requesting various financial records. On November 22, 2004, the defendant met with two IRS Criminal Investigation Division Special Agents regarding the summons served on The Optimax Group and Optimax, Inc., and refused to comply with the summons.

13. On October 6, 2004, the IRS issued an administrative summons on a financial institution which requested copies of bank records pertaining to the Optimax Bank Account. As noted above, the defendant's mother-in-law was the only person listed as signatory for the Optimax Bank Account. On October 15, 2004, the

financial institution received a memorandum from the defendant, via facsimile transmission, stating that the financial institution did not have his permission or authorization to share information on the Optimax Bank Account "with anyone or any organization including the IRS or the Treasury Department. . . ."

## II. CHARGE

14. That during the calendar years hereinafter set forth, RONALD CRUICKSHANK, defendant herein, in the Eastern District of North Carolina and elsewhere, aiding and abetting others, had and received taxable income in the sums hereinafter set forth; that upon said taxable income there was income tax owing to the United States of America; that well-knowing and believing the foregoing facts, the Defendant, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar years by failing to make an income tax return on or before the dates hereinafter set forth, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax, and by taking affirmative acts to evade payment of income tax, including, without limitation, the following:

    (a) concealing and attempting to conceal from the Internal Revenue Service the nature and extent of his income and the location thereof;

    (b) causing his employer to issue his paychecks in the name of a nominee entity;

7

(c) causing his employer to file federal and state tax information returns reflecting his income as being earned by a nominee entity;

(d) arranging for his mother-in-law to open a bank account for his nominee entity and to be listed as the sole signatory authority for such bank account;

(e) arranging for his salary to be deposited into his nominee entity's bank account;

(f) maintaining dominion and control over the funds deposited into his nominee entity's bank account;

(g) paying his personal expenses out of his nominee entity's bank account;

(h) refusing to comply with an Internal Revenue Service administrative summons served on his nominee entity; and

(i) attempting to prevent a financial institution from complying with an Internal Revenue Service administrative summons for records pertaining to the bank account of his nominee entity;

all in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

15. The allegations set forth in paragraphs 1 through 14 are repeated and realleged in COUNTS ONE through FIVE of this Indictment, as though fully set forth therein:

| COUNTS | CALENDAR YEAR | APPROXIMATE TAXABLE INCOME | DATE TAX RETURN DUE |
|---|---|---|---|
| ONE | 2000 | $95,724.00 | April 16, 2001 |
| TWO | 2001 | $297,132.00 | April 15, 2002 |
| THREE | 2002 | $156,694.00 | April 15, 2003 |

8

| FOUR | 2003 | $256,668.00 | April 15, 2004 |
| FIVE | 2004 | $401,658.96 | April 15, 2005 |

Each of the above counts constituting a separate violation of Title 26, United States Code, Section 7201 and 18 United States Code, Section 2.

A TRUE BILL

GEORGE E. B. HOLDING
United States Attorney

BY: DENNIS M. DUFFY
Assistant United States Attorney

9

DO 442 (Rev. 12/85) Warrant for Arrest

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA

v.

RONALD CRUICKSHANK

WARRANT FOR ARREST

CASE NUMBER: 5:07-CR-177-FL

COPY

To: The United States Marshal
    and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ___RONALD CRUICKSHANK___ and bring him or her forthwith to the nearest magistrate to answer a(n) __X__ Indictment

_____Information _____Complaint_____Order of Court

_____Violation Notice _____ Probation Violation Petition

charging him or her with violation of_____ United States Code, Section(s)_____

Ct.1 - 26 U.S.C. § 7201 AND 18 U.S.C. § 2 - ATTEMPT TO EVADE OR DEFEAT TAX; AIDING AND ABETTING.

DENNIS P. IAVARONE
Name of Issuing Officer

[signature]
Signature of Issuing Officer

Bail Recommended: DETENTION

CLERK
Title of Issuing Officer

July 20, 2007 - RALEIGH, NC
Date and Location

by United States Attorney
Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above named defendant at |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | NAME AND TITLE OF ARRESTING |
|---|---|---|
| DATE OF ARREST | | |

TOTAL P.011